SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
AMY LISHINSKI (*pro hac vice*)
Amy.Lishinski@wilmerhale.com
SPENCER TODD (*pro hac vice*)
Spencer.Todd@wilmerhale.com
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant*
FACEBOOK, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| THE INFORMED CONSENT ACTION NETWORK and DEL BIGTREE,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE LLC and FACEBOOK, INC.,<br><br>Defendants. | CASE NO.: 4:20-cv-09456-JST<br><br>**DEFENDANT FACEBOOK'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE COUNT THREE OF THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Jon S. Tigar<br>Courtroom 6 – 2nd floor<br>Date: April 29, 2021<br>Time: 2:00 p.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO STRIKE ................................................................. 1

STATEMENT OF REQUESTED RELIEF ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

BACKGROUND .......................................................................................................................... 2

    A.     A. Facebook's Content Policies ..................................................................... 2

    B.     B. Informed Consent Action Network ......................................................... 3

ARGUMENT ................................................................................................................................ 4

I.    THE GOOD-FAITH-AND-FAIR-DEALING CLAIM ARISES FROM FACEBOOK'S FIRST AMENDMENT PROTECTED ACTIVITY IN CONNECTION WITH A PUBLIC ISSUE ................................................................. 5

II.    PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON THE MERITS ........................................................................................................... 7

    A.     Plaintiffs Fail To State an Implied Covenant Claim .................................. 7

            1.    Plaintiffs Have Not Identified Any Term Of The Facebook Terms Of Service That Give Rise To Their Claimed Implied Duty ....................... 7

            2.    Plaintiffs' Good-Faith-And-Fair-Dealing Claims Are Barred By Facebook's Respective Terms Of Service ................................................. 8

    B.     The First Amendment And Section 230 Independently Bar Plaintiffs' Content Moderation Claims ........................................................................ 9

            1.    The First Amendment Bars Plaintiffs' Claims ........................................... 9

            2.    Section 230 Also Bars Plaintiffs' Implied-Covenant Claim ..................... 11

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Associates & Aldrich Co. v. Times Mirror Co.*,
    440 F.2d 133 (9th Cir. 1971)..................................................................................................10

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009)..................................................................................................12

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)............................................................................................11, 12

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal. 4th 342 (1992)..................................................................................................................8

*Cross v. Facebook, Inc.*,
    222 Cal. Rptr. 3d 250 (Cal. App. 2017) .................................................................................5, 6

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ......................................................................9, 13

*Electronic Frontier Foundation v. Global Equity Management (SA) Pty Ltd.*,
    290 F. Supp. 3d 923 (N.D. Cal. 2017) .......................................................................................5

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc)..............................................................................2, 11

*Federal Agency of News, LLC v. Facebook, Inc.*,
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) ...................................................................................13

*Federal Agency of News, LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) .............................................................................11, 12

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020)........................................................................................11, 12

*Guz v. Bechtel National, Inc.*,
    24 Cal. 4th 317 (2000)................................................................................................................7

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
    515 U.S. 557 (1995)..................................................................................................................10

*Jordan-Benel v. Universal City Studios, Inc.*,
    859 F.3d 1184 (9th Cir. 2017)....................................................................................................5

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016)..................................................................................................12

*King v. Facebook, Inc.*,
    2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) .................................................................. 13

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................................... 2

*Kronemyer v. Internet Movie Database, Inc.*,
    59 Cal. Rptr. 3d 48 (Cal. App. 2007) .............................................................................. 6

*La Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................................ 1, 2, 5, 10

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ............................................................................... 10

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) ..................................................................8, 9, 13

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974) .................................................................................................. 5, 10

*Murphy v. Twitter, Inc.*,
    247 Cal. Rptr. 3d 360 (Cal. App. 2021) ................................................................... 11, 12

*Nagel v. Twin Labs, Inc.*,
    134 Cal. Rptr. 2d 420 (Cal. App. 2003) .......................................................................... 6

*Navellier v. Sletten*,
    52 P.3d 703 (Cal. 2002) ................................................................................................... 5

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ....................................................................................................... 10

*Niantic, Inc. v. Global++*,
    2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) .................................................................. 7

*Nygard, Inc. v. Uusi-Kerttula*,
    72 Cal. Rptr. 3d 210 (Cal. App. 2008) ............................................................................ 6

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    35 Cal. Rptr. 3d 31 (Cal. App. 2005) .............................................................................. 5

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) ........................................................................................... 7

*Racine & Laramie, Ltd. v. Department of Parks and Recreation*, 114 Cal. Rptr. 2d
    335 (Cal. App. 1992) ....................................................................................................... 8

*Resolute Forest Products, Inc. v. Greenpeace International*,
    302 F. Supp. 3d. 1005 (N.D. Cal. 2017) ...................................................................... 4, 7

1  *Riley v. National Federation of the Blind of North Carolina., Inc.*,
2        487 U.S. 781 (1988) .................................................................................................10
3  *Search King Inc. v. Google Tech., Inc.*,
        2003 WL 21464568 (W.D. Okla. May 27, 2003) ......................................................10
4  *Sikhs for Justice ("SFJ"), Inc. v. Facebook, Inc.*,
5        144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...............................................................11, 12
6  *Sikhs for Justice, Inc. v. Facebook, Inc.*,
        697 F. App'x 526 (9th Cir. 2017) ........................................................................11, 12
7
   *Stackla, Inc. v. Facebook, Inc.*,
8        2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ............................................................6
9  *Thrifty Payless, Inc. v. The Americana at Brand, LLC*,
10        160 Cal. Rptr. 3d 718 (Cal. App. 2013) ................................................................7, 8
11 *Vess v. Ciba-Geigy Corp. USA*,
        317 F.3d 1097 (9th Cir. 2003) ...............................................................................4, 6
12
   *Young v. Facebook, Inc.*,
13        2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) .............................................................8
14 *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) ....................................5, 10
15                       **STATUTES, RULES, AND REGULATIONS**
16 47 U.S.C. § 230(c) ................................................................................................... *passim*
17 47 U.S.C. § 230(c)(1) ....................................................................................................11, 13
18 47 U.S.C. § 230(f)(2) ...........................................................................................................11
19
   Cal. Civ. Proc. Code § 425.16 ....................................................................................1, 5, 6
20
   Fed. R. Civ. P. 12(b)(6) .........................................................................................................7
21
22                                **CONSTITUTION**
23 U.S. CONST. amend. I........................................................................................... *passim*
24                                **OTHER AUTHORITIES**
25
26
27
28

**NOTICE OF MOTION AND MOTION TO STRIKE**

PLEASE TAKE NOTICE THAT, on April 29, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the United States District Court for the Northern District of California, Oakland Division, this Motion to Strike will be heard. Facebook, Inc. moves to strike Count Three of the Complaint pursuant to California's anti-SLAPP statute. This Motion to Strike is based on this Notice of Motion and the Memorandum of Points and Authorities.

**STATEMENT OF REQUESTED RELIEF**

Pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, Facebook requests that Count Three of the Complaint be struck, and that Facebook be awarded fees and costs associated with litigating this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs The Informed Consent Action Network and Del Bigtree (collectively, "Plaintiffs") attack decisions made by Defendant Facebook, Inc. ("Facebook") to deactivate Plaintiffs' Facebook Page. Plaintiffs had repeatedly used that Page to spread dangerous misinformation about COVID-19, going so far as to encourage people to contract "this cold." In keeping with its policies on misinformation that threatens real-world harm, Facebook removed these posts. Each time, Facebook informed Plaintiffs of the basis for its decision. Finally, after no less than six violations, Facebook deactivated Plaintiffs' entire Page. Plaintiffs now seek to punish Facebook for that decision on the theory that deactivating the Page violated the implied covenant of good faith and fair dealing.

California's anti-SLAPP statute requires that Plaintiffs' implied-covenant claim be struck. California enacted its anti-SLAPP law—which applies to state law claims asserted in federal court—to reduce the proliferation of "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a). Plaintiffs' implied-covenant claim takes direct aim at Facebook's First Amendment rights by challenging its decision to stop disseminating Plaintiffs' content through the Facebook platform. As numerous courts have recognized, "Facebook [has a] First Amendment right to decide what

to publish and what not to publish on its platform." *La Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017).

And for multiple, independent reasons, Plaintiff cannot show a reasonable probability of prevailing on their implied-covenant claim, as the anti-SLAPP law requires. Plaintiffs have failed to identify any express terms in their agreement with Facebook that give rise to the implied duty of good faith and fair dealing. And Facebook's terms of service expressly permit Facebook to remove user content at its discretion. Beyond these claim-specific defects, the First Amendment precludes claims, such as those asserted here, that seek to override Facebook's exercise of editorial discretion over content on its platform. And Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c), likewise broadly "immunizes [] webhost[s]," like Facebook, against claims, such as these, that arise from "exercis[ing] a publisher's 'traditional editorial functions—such as deciding whether to publish, *withdraw*, post-pone, or alter content.'" *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1184 (9th Cir. 2008) (en banc) (emphasis added).

For all these reasons, Facebook respectfully requests that the Court strike Plaintiff's implied-covenant claim.

## BACKGROUND

**A.    Facebook's Content Policies**

Facebook is a popular online service for sharing content, with billions of users worldwide. ¶¶ 25, 26.[1] Facebook's mission is to "give people the power to build community." Holtzblatt Ex. 1 (Facebook Terms of Service).[2] Because "[p]eople will only build community on Facebook if they feel safe," the company takes efforts to "combat harmful conduct" on its platform. Holtzblatt Ex. 1. Accordingly, the use of the platform is governed by rules and policies

---

[1] References to " ¶ _" are references to the Complaint.

[2] Citations to "Holtzblatt Ex. _" are to exhibits attached to the Declaration of Ari Holtzblatt. Facebook's terms of use and incorporated content policies are properly before the Court on this motion to strike. Those documents are expressly referenced in Plaintiffs' Complaint and their claim for breach of the implied covenant depends on their contents. *See, e.g.*, ¶ 20 (citing Facebook's Terms of Service); ¶¶ 48, 52-53 (citing and quoting Facebook's Community Guidelines and content policies). *Accord Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

that make clear that certain kinds of content are not allowed, and that Facebook has discretion to remove unwanted material from its service. ¶¶ 28, 48. To create a Page and use Facebook, Plaintiffs agreed to Facebook's Terms of Service and the incorporated Community Standards. ¶ 22; Holtzblatt Ex. 1; Holtzblatt Ex. 2, 3, 4 ("Facebook Community Standards").

Facebook's Terms of Service provide that a user may not use Facebook "to do or share anything: [1] That violates these Terms, our Community Standards, and other terms and policies that apply to your use of Facebook. [2] That is unlawful, misleading, discriminatory or fraudulent. [3] That infringes or violates someone else's rights, including their intellectual property rights." Holtzblatt Ex. 1. Facebook's Community Standards, which are expressly incorporated into its Terms, elaborate on the kind of content that Facebook may remove. Facebook's safety policy, for example, prohibits content that "intentionally or unintentionally celebrate[s] or promote[s] suicide or self-injury." Holtzblatt Ex. 3. Similarly, Facebook's policy on violence and criminal behavior bars content that promotes "[h]arm against people," including "[p]romoting or advocating for harmful miracle cures for health issues." Holtzblatt Ex. 4. Facebook has also elaborated on how its policies apply in light of the ongoing COVID-19 pandemic and has explained that it prohibits content "[c]oordinating, depicting, admitting to or promoting active and deliberate spread of communicable diseases by you or your associates." *Id.* Likewise, its policies prohibit content "coordinating interference with the administration of the COVID-19 vaccine"; and "calling to action, advocating, or promoting that others not get the COVID-19 vaccine." *Id.*

Facebook expressly retains the authority to "remove or restrict access to content that is in violation of these provisions." Holtzblatt Ex. 1. In addition, the Terms provide that Facebook may "suspend or permanently disable access to your account" if "we determine that you have clearly, seriously or repeatedly breached our Terms or Policies, including in particular our Community Standards." *Id.*

### B.  Informed Consent Action Network

According to the Complaint, ICAN is a non-profit network that "investigates and disseminates information regarding public health safety issues," while Del Bigtree is the host of

1   the HighWire, a show that "sheds light on governmental oversight in the area of vaccine and
2   drug development". ¶¶ 13-16.
3         Facebook deactivated ICAN's page on November 21, 2020. This decision followed
4   Facebook's repeated removal of offending content from ICAN's Page. Specifically, between
5   July and November, Facebook removed no less than six posts. ¶¶ 61-62; Compl. Ex. C. Many of
6   these—with titles like "MASK TEST PROVES TOXIC FOR CHILDREN," "MASKS ARE A
7   JOKE," and "WE NEED TO CATCH THIS COLD!"—violated Facebook's "Community
8   Standards on misinformation that can cause physical harm." ¶ 61; Compl. Ex. C at 5, 10, 12-14.
9   At least one post was removed for hate speech. Compl. Ex. C at 6. After a clear warning that
10  "[y]our Page is at risk of being unpublished because of continued Community Standards
11  violations," Compl. Ex. C at 9, Facebook finally unpublished the Page.
12        Plaintiffs filed this lawsuit on December 30, 2020, asserting two claims against
13  Facebook. The first, Count One, arises under federal law and is not subject to this motion. The
14  second, Count Three, is the basis for this motion, and argues that Facebook breached the implied
15  covenant of good faith and fair dealing under California law by removing Plaintiffs' Facebook
16  Page.

**ARGUMENT**

Under California's anti-SLAPP statute, claims which have no probability of success on the merits must be struck where they arise from a defendant's exercise of its speech rights in connection with an issue of public interest. To determine whether a motion to strike should be granted, federal courts in this circuit first consider whether "the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech" in connection with a public issue. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). If so, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* (internal citations and quotation marks omitted); *see also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d. 1005, 1025 (N.D. Cal. 2017).

## I. THE GOOD-FAITH-AND-FAIR-DEALING CLAIM ARISES FROM FACEBOOK'S FIRST AMENDMENT PROTECTED ACTIVITY IN CONNECTION WITH A PUBLIC ISSUE

For the first prong of the anti-SLAPP analysis, which should be "construed broadly," Cal. Civ. Proc. Code § 425.16(a), "the critical consideration is whether the [plaintiff's] cause of action is *based on* the defendant's protected free speech or petitioning activity," *Navellier v. Sletten*, 52 P.3d 703, 709 (Cal. 2002); *see also Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 943 (N.D. Cal. 2017). "[A] court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017). In this inquiry, the court examines "the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 39 (Cal. App. 2005).

There is little question that Plaintiff's implied-covenant claim is based on activity by Facebook that is protected by the First Amendment. Facebook provides a platform for disseminating ideas and, in doing so, makes decisions about what content to disseminate or not disseminate through that platform. The First Amendment protects this "exercise of editorial control and judgment." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 257-258 (1974). Plaintiff's implied-covenant claim targets precisely this type of protected editorial judgment by challenging Facebook's moderation of specific content posted to Facebook. *See* ¶ 91 ("Facebook unfairly and in bad faith interfered with Plaintiffs' right to receive the benefits of the contract by, *inter alia*, taking down Plaintiffs' videos and the HighWire's page without cause or notice."); *see also* ¶¶ 61-65. Courts have routinely held that these sorts of moderation decisions are protected by the First Amendment. *See, e.g.*, *La Tiejira*, 272 F. Supp. 3d at 991 ("Facebook [has a] First Amendment right to decide what to publish and what not to publish on its platform."); *Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014). And California courts have repeatedly held that content-moderation decisions are covered by the first prong of the anti-SLAPP statute. For example, Facebook's decision to allow certain posts to remain on its platform despite the

plaintiff's complaints triggered the protection of the anti-SLAPP statute. *See Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250, 260 (Cal. App. 2017). So too did IMDB's decision to exclude a certain movie producer from movie credits posted to its website. *See Kronemyer v. Internet Movie Database, Inc.*, 59 Cal. Rptr. 3d 48, 52 (Cal. App. 2007).

Moreover, Facebook's moderation decisions in this case were "an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). This is not a high bar; "an issue of public interest … is any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 220 (Cal. App. 2008). Given the billions of people who use Facebook, ¶ 25, "Facebook's ability to decisively police the integrity of its platform is without question a pressing public interest." *Stackla, Inc. v. Facebook, Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019). Indeed, the Complaint itself recognizes the public's interest in the Facebook platform and Facebook's moderation decisions. ¶¶ 26, 31-34. And public has an especially strong interest in the particular decisions at issue in this case: All but one of the posts in Exhibit C (the only ones whose subject matter is identified in the Complaint) were removed because they violated Facebook's policy against "misinformation that can cause physical harm." *See, e.g.*, Compl. Ex. C at 5, 10, 11. These posts included several videos encouraging people not to wear masks, *Id.*, along with one video, the caption of which advocates for "those of us who are healthy" to "CATCH THIS COLD!" The posts also included a video relating to COVID-19 treatment, which again was found to include "misinformation that can cause physical harm." *Id.* at 14. As a general proposition, "matters of health … are undeniably of interest to the public." *Nagel v. Twin Labs, Inc.*, 134 Cal. Rptr. 2d 420, 425 (Cal. App. 2003); *see also Vess*, 317 F.3d at 1110 (statements regarding use of prescription drugs for treatment of attention deficit disorder in children protected by the anti-SLAPP statute). That general proposition holds particularly true here; a Google search for "COVID-19 pandemic" produces over one billion results, plainly demonstrating the public's intense interest in the ongoing public health crisis. *See Cross*, 222 Cal. Rptr. 3d at 259 ("Google searches for tired truckdrivers reveal[] millions of results. It is an issue of tremendous concern.").

## II. PLAINTIFFS CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON THE MERITS

Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended by*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied*, 139 S. Ct. 1446 (2019). If Plaintiffs "cannot plead a plausible cause of action under the FRCP 12(b)(6) standard, then Plaintiffs as a matter of law cannot meet the probability of success on the merits standard." *Resolute Forest Prods.*, 302 F. Supp. 3d at 1026; *see also Niantic, Inc. v. Global++*, 2020 WL 1548465, at *7-8 (N.D. Cal. Jan. 30, 2020).

As explained in Defendants' Motion to Dismiss, Plaintiffs' good-faith-and-fair-dealing claim fails for several, independent reasons. First, Plaintiffs claims are squarely foreclosed by California law. Second, the claims are barred by both the First Amendment and Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c). Facebook repeats here the analysis that is contained in Defendants' Motion to Dismiss with respect to Facebook.

### A. Plaintiffs Fail To State an Implied Covenant Claim

Plaintiffs cannot state a claim for breach of the covenant of good faith and fair dealing against Facebook. Not only have Plaintiffs failed to identify any express terms in their agreement with Facebook that give rise to the implied duty of good faith and fair dealing, Facebook's terms of service permit Facebook to remove user content at its discretion.

#### 1. <u>Plaintiffs Have Not Identified Any Term Of The Facebook Terms Of Service That Give Rise To Their Claimed Implied Duty</u>

Under California law, the implied covenant of good faith and fair dealing exists "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000). Because the implied covenant is limited to the benefits of the agreement "actually made," it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 350. Thus, although a plaintiff need not allege

1   that a defendant violated "a specific provision of the contract" to state a good faith and fair
2   dealing claim, *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 730
3   (Cal. App. 2013), he or she still must identify "express terms" of the contract "on which to hinge
4   an implied duty," *Young v. Facebook, Inc.*, 2010 WL 4269304, at *3-4 (N.D. Cal. Oct. 25, 2010).

These principles foreclose Plaintiffs' good-faith-and-fair-dealing claim, because Plaintiffs have not identified any such terms. The Complaint asserts generally that Facebook's content-moderation activities were "in bad faith" and "not in accordance with Facebook's Terms [of Service]." ¶ 64. But Plaintiffs do not identify any particular provision that Facebook failed to carry out in good faith. *See* ¶¶ 63-64, 66, 90-92. Without identifying some specific contractual provisions obligating Facebook to host whatever Plaintiffs want to post—including, for example, content that discourages people from wearing masks to protect against COVID-19, *see* Compl. Ex. C at 11—Plaintiffs' implied covenant claims cannot proceed. *See Racine & Laramie, Ltd. v. Dept. of Parks & Recreation*, 114 Cal. Rptr. 2d 335, 338 (Cal. App. 1992), *modified on other grounds*, 1993 Cal. App. LEXIS 8 (Jan. 6, 1993) ("The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation."); *see also Lewis v. Google LLC*, 461 F. Supp. 3d 938, 961 (N.D. Cal. 2020) (covenant of good faith does not protect interests "not directly tied to the contract's purpose" (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988))), *appeal docketed*, No. 20-16073 (9th Cir. June 1, 2020).

### 2. Plaintiffs' Good-Faith-And-Fair-Dealing Claims Are Barred By Facebook's Respective Terms Of Service

Moreover, there can be no breach of covenant claim if express terms exist and the defendant's actions are authorized by those terms. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992). That is precisely the case here. The conduct about which Plaintiffs complain—the removal of their content from Facebook's platform—is expressly permitted under Facebook's terms of service.

Facebook's Terms of Service expressly permit Facebook to "remove or restrict access to content that is in violation of" Facebook's "Terms, our Community Standards, and other terms and policies that apply to your use of Facebook." Holtzblatt Ex. 5 ¶ 3.2. They further permit

Facebook to "suspend or permanently disable access to your account" "[i]f we determine that you have clearly, seriously or repeatedly breached our Terms or Policies." *Id.* ¶ 4.2. Both provisions thus reserve *to Facebook* the authority to determine whether certain content violates Facebook's Terms, Community Standards, or other policies, and expressly permit Facebook the right to remove or restrict content upon such a determination, or to suspend accounts about which Facebook repeatedly makes such a determination.

Because Plaintiffs' agreement with Facebook expressly permits Facebook to engage in the conduct of which Plaintiffs complain, their good-faith-and-fair-dealing claims fail. *See Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (Facebook did not breach the implied covenant by removing plaintiff's posts where "Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion"); *Lewis*, 461 F. Supp. 3d at 961 (no breach of the implied covenant by removing videos with hateful content, as defendant was expressly authorized to do by its terms and guidelines).

### B. The First Amendment And Section 230 Independently Bar Plaintiffs' Content Moderation Claims

#### 1. The First Amendment Bars Plaintiffs' Claims

Facebook's editorial decisions about the content it permits on its platform are protected by the First Amendment. Indeed, even Plaintiffs begrudgingly admit that "Facebook arguably ha[s] some rights to moderate content on [its] platform[]."¶ 66.

In light of the ongoing pandemic, Facebook has exercised those rights to curtail the spread of potentially dangerous misinformation about COVID-19 treatment, vaccination, or transmission. *See* ¶ 48. Facebook has committed to removing "content with false claims or conspiracy theories that have been flagged by leading global health organizations and local health authorities that could cause harm to people who believe them." Holtzblatt Ex. 5.[3]

These policies reflect Facebook's editorial judgment that information that contradicts the advice of public health authorities regarding COVID-19 is harmful, and that removing such

---

[3] This document is expressly referenced in Plaintiffs' Complaint. ¶ 48.

information may help keep its user community safe. *See* Holtzblatt Ex. 5. Because "one important manifestation of the principle of free speech is that one who chooses to speak may also decide 'what not to say,'" Facebook's determinations that such content is not welcome on its platform is plainly entitled to First Amendment protection. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995); *see also id.* at 570 ("[T]he presentation of an edited compilation of speech generated by other persons … fall[s] squarely within the core of First Amendment security."); *La Tiejira*, 272 F. Supp. 3d at 991 ("Facebook [has a] First Amendment right to decide what to publish and what not to publish on its platform.").

Yet through this lawsuit, ICAN and Bigtree ask this Court to deprive Facebook of "the autonomy to choose the content of [its] own message," and the choice "not to propound a particular point of view." *Hurley*, 515 U.S. at 573, 575. The First Amendment does not allow this result. *Id.*; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964); *Miami Herald Pub. Co.*, 418 U.S. at 257-258 (striking down law requiring newspapers to publish certain third-party speech); *Zhang*, 10 F. Supp. 3d at 443 (search engine's judgment about what content to exclude from its search results protected by First Amendment); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-630 (D. Del. 2007) (same); *Search King Inc. v. Google Tech., Inc.*, 2003 WL 21464568, at *3 (W.D. Okla. May 27, 2003) (same). Indeed, the magnitude of the burden Plaintiffs would impose on Facebook's First Amendment rights is made clear by the relief they seek: "[a]n order directing Facebook to restore" Plaintiffs' social media account and posts and "enjoining [Facebook]" from exercising editorial control in the future. Compl., Prayer for Relief. That is compelled speech, and it is flatly foreclosed by the First Amendment. Just as "the courts … should [not] dictate the contents of a newspaper," *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971), Plaintiffs may not use the courts to force Facebook to publish their videos and other content. Doing so would impermissibly "[m]andat[e] speech that [Facebook] would not otherwise make." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

    2.  <u>Section 230 Also Bars Plaintiffs' Implied-Covenant Claim</u>

  Plaintiffs' claims are further barred by Section 230 of the Communications Decency Act. *See* 47 U.S.C. § 230(c)(1).

  As the Ninth Circuit has repeatedly recognized, Congress enacted Section 230 "to encourage voluntary monitoring" of objectionable material, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003), by "immuniz[ing] a webhost who exercises a publisher's 'traditional editorial functions—such as deciding whether to publish, *withdraw*, post-pone, or alter content.'" *Fair Hous. Council of San Fernando Valley v. Roommates*, 521 F.3d 1157, 1184 (9th Cir. 2008) (emphasis added). Courts in this Circuit (and elsewhere) thus routinely hold that Section 230(c)(1) bars exactly the kind of claims at issue here: attacks on a service provider's "decision to block access to—or, in other words, to refuse to publish"—user content, including user-uploaded videos and posts. *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-1095 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (mem.); *see also, e.g., Fyk v. Facebook, Inc.*, 808 F. App'x 597, 598 (9th Cir. 2020), *cert. denied*, No. 20-632, 2021 WL 78179 (U.S. Jan. 2021); *Fed. Agency of News, LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119-1120 (N.D. Cal. 2020); *Murphy v. Twitter, Inc.*, 247 Cal. Rptr. 3d 360, 376-77 (Cal. App. 2021).

  Section 230 bars a claim when three factors are met: "(1) Defendant is a provider or user of an interactive computer service; (2) the information for which Plaintiff seeks to hold Defendant liable is information provided by another information content provider; and (3) Plaintiffs' claim seeks to hold Defendant liable as the publisher or speaker of that information." *Sikhs for Justice*, 144 F. Supp. 3d at 1092-1093 (quotation marks omitted). Each of these conditions is satisfied as to Plaintiffs' claims.

  *First*, Facebook is a provider of "interactive computer services." An "[i]nteractive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." 47 U.S.C. § 230(f)(2). Facebook satisfies this definition because users access their computers servers to share information with others, as

1  numerous courts have held. *See, e.g., Fed. Agency of News*, 432 F. Supp. 3d at 1117 (Facebook);
2  *Sikhs for Justice*, 144 F. Supp. 3d at 1093 (same).

3  *Second,* there is little question that Plaintiffs' claims concern content created not by
4  Facebook, but by the Plaintiffs themselves. Throughout their Complaint, Plaintiffs complain
5  about Facebook's treatment of content they posted to the Facebook platform, including videos
6  and other material that, in Plaintiffs' words, "challeng[e] governmental narratives regarding
7  vaccines and drugs." ¶ 14; *see also id*. ¶¶ 8-9, 54-59, 60-67, 91. Nowhere do Plaintiffs allege that
8  Facebook played any role in the creation of the content that it subsequently removed from its
9  platform. Because Facebook did not "play a significant role in creating, developing, or
10 'transforming' the relevant information," this Section 230 prerequisite is satisfied. *Carafano*, 339
11 F.3d at 1125; *see also Sikhs*, 697 Fed. App'x at 526; *Fyk*, 808 Fed. App'x at 598; *Fed. Agency of
12 News*, 432 F. Supp. 3d at 1119-1120; *Murphy*, 247 Cal. Rptr. 3d at 370.

13 *Third*, Plaintiffs' claims impermissibly seek to treat Facebook as a publisher or speaker of
14 user-generated content. In evaluating whether a claim treats a provider as a publisher or speaker
15 of user-generated content, "what matters is not the name of the cause of action." *Barnes v.
16 Yahoo!, Inc.*, 570 F.3d 1096, 1101-1102 (9th Cir. 2009); *see also Murphy*, 247 Cal. Rptr. 3d at
17 368-69. What matters is whether the cause of action seeks to impose liability for "*publishing
18 conduct*"—such as "reviewing, editing, and deciding whether to publish or to *withdraw from
19 publication* third-party content." *Barnes* at 1101-1103 (emphasis added). This flexible test
20 prevents plaintiffs from "circumvent[ing] the CDA's protections through 'creative' pleading."
21 *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016).

22 Plaintiffs' claims treat Facebook as a publisher. Plaintiffs posit that Facebook breached
23 the relevant covenant by removing Plaintiffs' videos from Facebook and removing the HighWire
24 with Del Bigtree Facebook page. *See* ¶¶ 56, 84, 91. "[R]emoving content is something publishers
25 do, and to impose liability on the basis of such conduct necessarily involves treating the liable
26 party as a publisher." *Barnes*, 570 F.3d at 1103. That remains true where, as here, a lawsuit
27 amounts to an attack on a service provider's "interpretation and enforcement of its own general
28 policies rather than breach of a specific promise." *Murphy*, 247 Cal. Rptr. 3d at 373.

Courts in this district have therefore repeatedly held that Section 230(c)(1) precludes claims just like the claims in this case, based on an interactive content provider's decision to remove content, regardless of how they are styled. For example, in *Federal Agency of News v. Facebook, Inc.*, the court held that a good-faith-and-fair-dealing claim predicated on the removal and blocking of content a third-party posted to Facebook "unambiguously … treat[ed] Facebook as a publisher," and was therefore barred by Section 230(c)(1). 395 F. Supp. 3d 1295, 1307 (N.D. Cal. 2019). Similarly, in *Lewis*, the court held that Section 230(c)(1) barred claims for breach of the implied covenant, among other claims. 461 F. Supp. 3d at 953-955; *see also Ebeid*, 2019 WL 2059662, at *3 (Section 230 immunized Facebook from First Amendment claim, among others, because the claim sought "to hold Facebook liable for restricting what plaintiff can post on [its] platform"); *King v. Facebook, Inc.*, 2019 WL 4221768, at *3-5 (N.D. Cal. Sept. 5, 2019), *appeal docketed*, No. 20-15188 (9th Cir. Feb. 11, 2020) (Section 230 immunized Facebook from claims for breach of the covenant of good faith and fair dealing, among others, because it sought "to hold [Facebook] liable as a publisher for either removing [plaintiff's] posts, blocking his content, or suspending his accounts").

## CONCLUSION

For the foregoing reasons, Count Three should be struck and Facebook should be awarded its fees and costs associated with litigating this motion.

Respectfully submitted,

Dated: March 15, 2021

WILMER CUTLER PICKERING, HALE AND DORR LLP

By:  */s/ Sonal N. Mehta*
      SONAL N. MEHTA

*Attorney for Defendant Facebook, Inc.*

Case No.: 4:20-cv-09456-JST    -13-    Notice of Mot. and Mot. to Strike Count Three of Compl.; Memorandum in Support

# CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: March 15, 2021    By:   */s/ Sonal N. Mehta*
　　　　　　　　　　　　　　　　　Sonal N. Mehta