SONAL N. MEHTA (SBN 222086)
Sonal.Mehta@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

ARI HOLTZBLATT (*pro hac vice*)
Ari.Holtzblatt@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
Molly.Jennings@wilmerhale.com
AMY LISHINSKI (*pro hac vice*)
Amy.Lishinski@wilmerhale.com
SPENCER TODD (*pro hac vice*)
Spencer.Todd@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant*
FACEBOOK, INC.

LAUREN GALLO WHITE (SBN 309075)
lwhite@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

BRIAN M. WILLEN (*pro hac vice*)
bwillen@wsgr.com
BENJAMIN D. MARGO (*pro hac vice*)
bmargo@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-5800
Telephone: (212) 999-2000
Facsimile: (212) 999-5801

BECCA E. DAVIS (SBN 322765)
becca.davis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendant*
YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE INFORMED CONSENT ACTION NETWORK and DEL BIGTREE,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE LLC and FACEBOOK, INC.,<br><br>Defendants. | CASE NO.: 4:20-cv-09456-JST<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hon. Jon S. Tigar<br>Courtroom 6 – 2nd floor<br>Date: July 29, 2021<br>Time: 2:00 p.m. |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................................2

I.   PLAINTIFFS CANNOT STATE A FIRST AMENDMENT CLAIM ..............................2

    A.   Plaintiffs Have Not Pled A Coercion Theory Of State Action ...............................2

        1.   Plaintiffs Have Not Established Any Basis For Suing Private Entities On A Coercion Theory ....................................................................2

        2.   Plaintiffs' Allegations Do Not Amount to Government Coercion..............3

    B.   Plaintiffs Fail To Allege Facts Showing Joint Action..............................................8

II.  PLAINTIFFS' CLAIM IS BARRED BY THE FIRST AMENDMENT .........................12

CONCLUSION .......................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abu-Jamal v. Nat'l Pub. Radio*,
   1997 WL 527349 (D.D.C. Aug. 21, 1997) .................................................................. 6

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
   2021 WL 354174 (D.D.C. Feb. 2, 2021) ................................................................. 1, 6

*Balik v. Toy Talk, Inc.*,
   2016 WL 3212455 (N.D. Cal. June 6, 2016) ............................................................ 11

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ................................................................................................ 6, 7

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) .................................................................................................. 3

*Brock v. Zuckerberg*,
   2021 WL 2650070 (S.D.N.Y. June 25, 2021) ........................................................... 2

*Carlin Communications, Inc. v. Mountain States Tel. & Tel. Co.*,
   827 F.2d 1291 (9th Cir. 1987) ................................................................... 3, 7, 12, 13

*Children's Health Defense v. Facebook Inc.*,
   2021 WL 2662064 (N.D. Cal. June 29, 2021) ................................................. *passim*

*Daniels v. Alphabet Inc.*,
   2021 WL 1222166 (N.D. Cal., Mar. 31, 2021) ................................................. 1, 5, 6

*Fed. Agency of News LLC v. Facebook, Inc.*,
   432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................... 11

*Franklin v. Fox*,
   312 F.3d 423 (9th Cir. 2002) .................................................................................... 9

*Gorenc v. Salt River Project Agric. Improvement & Power Dist.*,
   869 F.2d 503 (9th Cir. 1989) .................................................................................... 9

*Hammerhead Enters., Inc. v. Brezenoff*,
   707 F.2d 33 (2d Cir. 1983) ..................................................................................... 12

*Heineke v. Santa Clara Univ.*,
   965 F.3d 1009 (9th Cir. 2020) ............................................................................... 3, 4

*Hernandez v. AFSCME California*,
   424 F. Supp. 3d 912 (E.D. Cal. 2019) ..................................................................... 11

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston, Inc.*,
515 U.S. 557 (1995) .................................................................................................... 12

*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974) ...................................................................................................... 5

*Langdon v. Google, Inc.*,
474 F. Supp. 2d 622 (D. Del. 2007) ........................................................................... 12

*Lewis v. Google LLC*,
461 F. Supp. 3d 938 (N.D. Cal. 2020) ......................................................................... 9

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ........................................................................................... 8, 12

*Mathis v. Pac. Gas & Elec. Co.*,
75 F.3d 498 (9th Cir. 1996) ................................................................................. *passim*

*Mathis v. Pac. Gas & Elec. Co.*,
891 F.2d 1429 (9th Cir. 1989) ................................................................................ 7, 10

*Miami Herald Pub. Co. v. Tornillo*,
418 U.S. 241 (1974) .................................................................................................... 12

*NetChoice, LLC v. Moody*,
2021 WL 2690876 (N.D. Fla. June 30, 2021) ............................................................ 12

*Paige v. Coyner*,
614 F.3d 273 (6th Cir. 2010) ........................................................................................ 3

*Rawson v. Recovery Innovations, Inc.*,
975 F.3d 742 (9th Cir. 2020) ...................................................................................... 10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) .................................................................................................... 12

*Roy v. Contra Costa Cnty.*,
2015 WL 5698743 (N.D. Cal. Sept. 29, 2015) ............................................................. 6

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) ................................................................................ 2, 3, 4

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128 (9th Cir. 2012) .................................................................................... 11

*United States v. Stein*,
541 F.3d 130 (2d Cir. 2008) ......................................................................................... 7

*West v. Atkins*,
487 U.S. 42 (1988) ...................................................................................................... 10

*Yates v. Auto City 76*,
    299 F.R.D. 611 (N.D. Cal. 2013) .......................................................................................... 11

*Zieper v. Metzinger*,
    392 F. Supp. 2d 516 (S.D.N.Y. 2005) ..................................................................................... 7

**RULES**

Fed. R. Civ. P. 15 ............................................................................................................................ 11

**MISCELLANEOUS**

U.S. Const. amend. I .................................................................................................................*passim*

U.S. Const. amend. XIV .................................................................................................................. 5

Plaintiffs' opposition brief confirms that their state action theories fail as a matter of law. Because Plaintiffs cannot cure this fundamental flaw in their First Amendment claim—and because their requested relief *itself* violates the First Amendment—their Amended Complaint should be dismissed with prejudice.

Plaintiffs' core theory asks the Court to accept that Representative Adam Schiff—and a few other members of Congress—transformed private Defendants into state actors by generally encouraging them to moderate content involving misinformation about the COVID-19 pandemic and suggesting that they might support amending Section 230. As an alternative to this baseless "coercion" theory, Plaintiffs' opposition brief introduces a new "joint action" theory that bears little relationship to the actual allegations in the FAC. While difficult to discern, this theory appears to be that members of Congress pushed Defendants to outsource their content moderation decisions to public health organizations, such as the Centers for Disease Control and Prevention ("CDC") and the World Health Organization ("WHO").

This is not the first time litigants have offered these theories, whether in seeking to hold Defendants liable for alleged First Amendment violations or in seeking to hold Mr. Schiff directly responsible for such purported coercion. And in each of those cases—including most recently a comprehensive decision by Judge Illston—courts have rightly rejected such claims. *See Children's Health Defense v. Facebook Inc.* ("*CHD*"), 2021 WL 2662064 (N.D. Cal. June 29, 2021) (dismissing with prejudice a nearly identical First Amendment claim against Facebook based on theory that Facebook acted jointly with the CDC or was coerced by Mr. Schiff's statements about vaccine misinformation); *Daniels v. Alphabet Inc.*, 2021 WL 1222166, at *6 (N.D. Cal., Mar. 31, 2021); *accord Ass'n of Am. Physicians & Surgeons v. Schiff*, 2021 WL 354174, at *5 (D.D.C. Feb. 2, 2021) ("*AAPS*"). Plaintiffs cannot evade these directly on-point rulings, and they make little effort to try. Instead, they cite a smattering of readily distinguishable cases, along with unpled allegations based on conduct that occurred after the FAC was filed. None of this does anything to support Plaintiffs' meritless effort to treat private online services as the equivalent of the federal government.

Nor can Plaintiffs evade the fact that their effort to obtain an injunction compelling Defendants to publish unwanted material on their services would itself *violate* the First Amendment. Plaintiffs' cursory response—that, if Defendants were forced by the government to act, they would thereby forfeit their own First Amendment rights—is incorrect and contrary to Ninth Circuit law.

## ARGUMENT

### I. PLAINTIFFS CANNOT STATE A FIRST AMENDMENT CLAIM

Plaintiffs concede that the First Amendment does not ordinarily restrict editorial decisions made by private entities. Opp. 12; *see also Brock v. Zuckerberg*, 2021 WL 2650070, at *3 (S.D.N.Y. June 25, 2021) ("courts throughout the country have also declined to treat Facebook as a state actor and have upheld the company's ability to remove content"). Nonetheless, they argue that Defendants were converted into state actors based on two distinct theories. *First*, Plaintiffs contend that Mr. Schiff and other individual members of Congress supposedly "threaten[ed] Defendants' immunity under Section 230, and provid[ed] significant encouragement to Defendants." Opp. 11. *Second*, Plaintiffs suggest that Defendants somehow acted "jointly" with the government by adopting the "position that any information that contradicted the Government was 'misinformation.'" *Id.* These theories, and the allegations that supposedly support them, fall far short of establishing state action.

#### A. Plaintiffs Have Not Pled A Coercion Theory Of State Action

##### 1. *Plaintiffs Have Not Established Any Basis For Suing Private Entities On A Coercion Theory*

As an initial matter, Plaintiffs cannot overcome the Ninth Circuit's holding in *Sutton* that a coercion theory like the one advanced here simply does not support a constitutional claim against a "truly private entity" like Defendants. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 843 (9th Cir. 1999). As explained in Defendants' opening brief (at 10-11), *Sutton* holds that a "private party" facing true government compulsion "is left with no choice of [its] own and consequently should not be deemed liable" solely because it was compelled to act by the government. *Id.* at 838 (quotation marks and citation omitted). In those circumstances, "a

1  plaintiff must show 'something more' than state compulsion in order to hold a private defendant
2  liable as a government actor." *Id.*

3        Plaintiffs try to avoid *Sutton*'s holding (Opp. 16) by citing *Carlin Communications, Inc.*
4  *v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987), as well as a Sixth Circuit case,
5  *Paige v. Coyner*, 614 F.3d 273, 279 (6th Cir. 2010). Both are readily distinguishable. *Paige*
6  found state action in a case **against a government employee**, and so does not address the issue
7  resolved in *Sutton*. 614 F.3d at 276, 279; *accord* Mot. 11. Plaintiffs' reliance on *Carlin* is
8  misplaced, for the reasons described in *Sutton* itself—and, more recently, by Judge Illston in
9  *CHD*. *See CHD*, 2021 WL 2662064, at *14-15. In *Carlin*, an Arizona deputy district attorney
10 specifically demanded that the defendant, a telephone company, terminate the plaintiff's service,
11 and threatened to prosecute the company if it did not comply. 827 F.3d at 1293. *Sutton*
12 distinguished *Carlin*, first, on the grounds that the defendant "was a public utility" and, second,
13 because there "the government directed a specific entity to take a specific (allegedly
14 unconstitutional) action against a specific person." *Sutton*, 192 F.3d at 843. Like *Sutton*, this case
15 has none of the features present in *Carlin*: Defendants are not heavily regulated public utilities,
16 and the government did not direct them to take any specific action against Plaintiffs by threat of
17 criminal prosecution. *See infra* pp.5-7. In such cases, as *Sutton* makes clear, the "something
18 more" is missing, and Plaintiffs cannot rely on a compulsion theory to bring a First Amendment
19 claim against a private party.

20       2.     *Plaintiffs' Allegations Do Not Amount to Government Coercion*

21       Even beyond this threshold flaw, Plaintiffs' opposition confirms that what they have
22 alleged simply is not "coercion" as a matter of law. That is so for several reasons.

23       *First*, as Defendants explained in their opening brief (at 11-12), a compulsion theory
24 requires that the government "commanded a particular result in, or otherwise participated in, [the
25 plaintiff's] **specific** case." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020)
26 (emphasis added); *accord Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982) (no state action where
27 government did not "dictate the decision to discharge or transfer **in a particular case**")
28 (emphasis added). Plaintiffs' opposition largely ignores this problem. Plaintiffs point to a few

remarks by individual members of Congress, including statements from Mr. Schiff and others, that vaguely questioned Defendants' handling of misinformation on their platforms. But Plaintiffs do not allege that any of those legislators ever directed Defendants to take any action with respect to Plaintiffs' specific content and videos; nor is there any suggestion that those individuals ever mentioned Plaintiffs or their content. As Judge Illston explained in dismissing a nearly identical claim against Facebook, Mr. Schiff's statements "are too general and amorphous to constitute coercive action with respect to the specific challenged actions in this case." *CHD*, 2021 WL 2662064, at *15 & n.10 (explaining that "CHD does not allege that Schiff (or anyone from the government) directed Facebook or Zuckerberg to take any specific action with regard to CHD or its Facebook page").

*Second*, Plaintiffs fail to establish that the government exercised, or threatened to exercise, any *actual coercive power* over Defendants. Plaintiffs baldly claim that "[w]hen a company acts against its business interests, that is prima facie evidence that the company is acting as a result of coercion or some other outside pressures" (Opp. 1), but they cite nothing in support of this argument; nor have they alleged any facts in support of the claim that removing Plaintiffs' content was in fact against Defendants' economic interests. Plaintiffs also rely on the timing of Defendants' alleged changes to their content moderation practices relative to when Mr. Schiff and others expressed concerns about content moderation, and they claim that Defendants "almost never" blocked Plaintiffs' content prior to 2019. Opp. 12-13. But this does not plausibly establish coercion. As for the timing, it is hardly surprising that Defendants would focus their moderation efforts on highly salient issues: for example, census misinformation around the time of the decennial census, misinformation about foreign influence in elections around the time Russia's election-related behavior was widely revealed in the press, and medical- and vaccine-related misinformation in the thick of a global pandemic.

But even imagining that Defendants' actions were responsive to Mr. Schiff's statements, that would not establish that they were "compelled" or "coerced." At the outset, Plaintiffs allege at the very most "generally applicable" threats of changes to Section 230, insufficient to demonstrate compulsion or coercion. *See Heineke*, 965 F.3d at 1013-1014; *see also Sutton*, 192

F.3d at 841 ("[G]overnmental compulsion in the form of a generally applicable law, without more, is [not] sufficient to deem a private entity a governmental actor."); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."). As the Ninth Circuit has made clear, mere "regulatory interest in a problem [does not] transform[] any subsequent private efforts to address the problem . . . into state action." *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996) ("*Mathis II*"). And critically, Plaintiffs identify no actual threat by Mr. Schiff (or anyone else) to punish Defendants if they failed to act. That is unsurprising. The House of Representatives has 435 voting members and is one chamber of Congress. Even if those members of Congress said anything specific about Plaintiffs—and they did not—their statements could not rise to a cognizable legal threat that could support a coercion theory. As Judge DeMarchi explained, "[t]he publicly expressed views of individual members of Congress—regardless of how influential—do not constitute 'action' on the part of the federal government." *Daniels*, 2021 WL 1222166, at *6; *see also CHD*, 2021 WL 2662064, at *8 (allegations that Mr. Schiff "pressured . . . Facebook to remove 'vaccine misinformation'" while questioning the continued propriety of Section 230 are "a far cry" from the "specific threats" in other government coercion cases).

Plaintiffs have no viable response. They do not identify any case that has ever found government coercion based on the statements of individual legislators. They try to distinguish *Daniels* on the ground that the plaintiff there supposedly "relied on a broader argument for government coercion." Opp. 22. That is not correct. There, as here, the plaintiff posted anti-vaccination misinformation, and alleged that members of Congress coerced defendants to remove that content, relying on the same correspondence and purported threats from Mr. Schiff that the FAC extensively cites. *Daniels*, 2021 WL 1222166, at *2-4.[1] And there, as here, the plaintiff alleged some kind of partnership between YouTube and government actors. *Id.* Judge

---

[1] Plaintiffs claim that they "allege far more information" than the "public comments" relied on by the *Daniels* plaintiff, yet they cite only two paragraphs of the FAC discussing two public statements by Mr. Schiff. Opp. 22-23 (citing FAC ¶¶ 44-45).

1  DeMarchi rejected all of that as a matter of law. As she explained, "speculative assertions" about
2  the purpose or effect of statements by individual members of Congress "do not support a theory
3  of government action." *Id*. at *6. *Daniels* is directly on point.
4        Similarly unpersuasive is Plaintiffs' half-hearted attempt to distinguish *Abu-Jamal v.*
5  *Nat'l Pub. Radio*, 1997 WL 527349 (D.D.C. Aug. 21, 1997), *aff'd,* 159 F.3d 635 (D.C. Cir.
6  1998) on the ground that that case involved "[a] single incident" and "did not include any
7  allegations of joint action." Opp. 15 n.2. *Abu-Jamal* rejected the theory that "the public
8  statements by a United States Senator and the Fraternal Order of Police condemning a decision
9  by NPR to air Jamal's commentaries could be considered government encouragement or
10 compulsion of a private act." 1997 WL 527349, at *5. If anything, the theory there was stronger
11 than the one that Plaintiffs offer here (FAC ¶¶ 39-58), as Plaintiffs here rely on statements from
12 members of Congress that are entirely general and make no specific reference to Plaintiffs or
13 their content. In contrast, in *Abu-Jamal*, NPR received federal funding and Senator Dole set his
14 sights on the plaintiff's broadcast specifically. Despite threats to NPR's funding and Senator
15 Dole's specific comments, the court still found no state action. *See* 1997 WL 527349, at *5-6.
16       Finally, Plaintiffs ignore *Association of American Physicians & Surgeons v. Schiff*, which
17 involved some of the same statements by Mr. Schiff about medical misinformation. 2021 WL
18 354174. As Defendants explained (Mot. 14), the court in *AAPS* held that content-moderation
19 decisions by Google, Facebook, and others were not "fairly traceable" to Mr. Schiff's statements.
20 *See id.* at *2. That same analysis necessarily defeats Plaintiffs' coercion theory—which Plaintiffs
21 all but concede by failing to address it. *See, e.g., Roy v. Contra Costa Cnty.*, 2015 WL 5698743,
22 at *3 & n.7 (N.D. Cal. Sept. 29, 2015), *aff'd,* 694 F. App'x 536 (9th Cir. 2017) ("When a non-
23 moving party's opposition to a motion to dismiss fails to address the moving party's arguments
24 regarding certain claims, the non-moving party has conceded that those claims fail").
25       Having failed to distinguish these directly on-point cases, Plaintiffs instead try to lower
26 the standard for "coercion" by arguing that government threats may be "implicit" or by wrongly
27 implying that the government's mere "encouragement" can suffice. Opp. 14. This effort fails,
28 and none of the cases Plaintiffs cite support their arguments. Plaintiffs say that *Bantam Books,*

1  *Inc. v. Sullivan*, 372 U.S. 58 (1963), indicates that government coercion can come in the form of "thinly veiled threats to institute criminal proceedings." 372 U.S. at 68; *see also id.* at 62. Perhaps, but there is nothing close to that here. Plaintiffs' attempt (Opp. 14, 20) to liken this case to *United States v. Stein* fails for the same reason. *See* 541 F.3d 130, 147, 151 (2d Cir. 2008) (accounting firm KPMG engaged in state action where, through "threat of indictment," the government conveyed that KPMG's "survival depended on its role in a joint project with the government to advance government prosecutions"); *see also Carlin*, 827 F.3d at 1295 (government official threatened a company with prosecution unless it took a specific action against a specific person).

Plaintiffs cite *Zieper v. Metzinger*, 392 F. Supp. 2d 516 (S.D.N.Y. 2005) to argue that threats need not be explicit to support coercion. 392 F. Supp. 2d at 525 (citation omitted). But *Zieper* was a suit against an FBI agent and a federal prosecutor, not a private party; and it involved facts totally different from what we have here. There, the FBI agent and the prosecutor repeatedly contacted a website hosting a video suspected of creating a terrorism threat and specifically asked the site operator to remove it. *Id.* at 523. Yet even that was not enough for coercion: "Government officials may lawfully contact third parties to seek voluntary assistance in preventing the dissemination of messages." *Id.* at 531. The only basis on which the court found possible coercion was where the FBI agent used "language referring to criminal conduct" and threatened to have his website pulled down if it did not cooperate. *Id.* Suffice it to say, nothing remotely similar is alleged in this case.

Plaintiffs next cite *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429 (9th Cir. 1989) ("*Mathis I*") to claim that coercion might not be necessary if Plaintiffs can show that Mr. Schiff "significantly encourag[ed]" Defendants to adopt certain policies with "threats to Section 230." Opp. 14. But *Mathis I* cuts against any effort to find state action here. *Mathis I* was a case brought by a PG&E employee terminated for agreeing to sell marijuana; the employee alleged that he had been fired pursuant to a Nuclear Regulatory Commission policy and claimed that PG&E had acted in close partnership with a county narcotics taskforce. In *Mathis II*, the Ninth Circuit found that plaintiff failed to establish state action by PG&E. As the court explained: "It

wasn't enough to show that PG&E was aware of a generalized federal concern with drug use at nuclear power plants, or even that specific government standards would have required exclusion on some materially different set of facts. The NRC pressure must so have influenced PG&E's decision that the choice must in law be deemed to be that of the [agency]." 75 F.3d at 502 (citation omitted). Echoing Plaintiffs' argument here, the employee argued that "any measures PG&E took against drug involvement at Diablo Canyon were designed to allay NRC concerns." *Id*. at 503. But the Ninth Circuit squarely rejected that approach to coercion:

> In essence, he asks us to hold that regulatory interest in a problem transforms any subsequent private efforts to address the problem (even those expressly designed to obviate the need for regulation) into state action. There was no hint of any such notion in *Mathis I* and we reject it now. If the government is considering regulation, affected private parties can try to convince it there's no need to regulate without thereby transforming themselves into the state's agents.

*Id*. (footnote omitted). Plaintiffs' theory here fails for the same reasons, just as Judge Illston recognized in *CHD*, 2021 WL 2662064, at *12 ("As the Ninth Circuit held in *Mathis*, there is a 'missing link' connecting the government "standard of decision" to the allegedly unconstitutional act.").

In short, the cases Plaintiffs rely on all confirm that government coercion will be found only where private actors are subjected to overwhelming pressure, akin to threat of prosecution, to comply with government demands to take specific actions relating to the plaintiffs themselves. But that plainly is not this case. Plaintiffs' unprecedented effort to expand state action doctrine to sanction Defendants' private editorial judgments would "eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms," *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1932 (2019), and should be rejected.

### B. Plaintiffs Fail To Allege Facts Showing Joint Action

Plaintiffs fare no better in attempting to fit their allegations into a "joint action" theory, which they attempt to develop for the first time in their opposition. Indeed, this new theory is identical to the one rejected in *CHD*, and it fails for the same reasons. *CHD*, 2021 WL 2662064, at *10-13.

As an initial matter, Plaintiffs' theory fails to the extent it is based on alleged coordination

with non-government actors, such as the WHO. *See CHD*, 2021 WL 2662064, at *10 ("allegations involving non-federal actors, such as the WHO . . . are irrelevant to determining whether CHD has plausibly alleged joint action"); *see also Lewis v. Google LLC*, 461 F. Supp. 3d 938, 956 (N.D. Cal. 2020) ("acts by a foreign government and its officials cannot constitute conduct under color of state law") *aff'd*, 2021 WL 1423118 (9th Cir. Apr. 15, 2021) (quotation marks omitted).

Beyond that, Judge Illston explained, establishing joint action requires not just showing that the private and federal actors have a "shared goal," *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002), but also that the federal government has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant ***in the challenged activity***," *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (alteration in original, emphasis added).

Plaintiffs do not even attempt to argue that they've alleged anything close to this level of interdependence—and certainly not with respect to Plaintiffs or their content. They instead argue that Defendants decided to look to the government for the "rule of decision" for how they should moderate COVID-19 misinformation in general—namely, that Defendants would treat "government" sources as authoritative with respect to enforcing their policies. Opp. 18 (citing *Mathis I*). Judge Illston rejected this precise argument in *CHD*. As she explained, the Ninth Circuit's subsequent decision in *Mathis II* clarified that joint action requires "not merely that PG&E [the private entity] had a close relationship with the [government] Task Force, but also that the relationship ***encompassed PG&E's plant-access decisions***." *CHD*, 2021 WL 2662064, at *12 (emphasis added) (quoting *Mathis II*, 75 F.3d at 504). Thus, showing only that "PG&E conducted its investigation 'in close cooperation' with the [government]" was insufficient where the plaintiff failed to show that the private entity "was ***involved in the decision*** to exclude Mathis from the plant." *Id.* at 21-22 (emphasis added). Under a joint action theory, in other words, the government must "have directed the ***particular decision*** challenged." *Mathis II*, 75 F.3d at 503 n.4 (emphasis added). Plaintiffs do not even attempt to satisfy this standard.

And in any event, Plaintiffs have not met even the looser "rule of decision" standard they propose. Plaintiffs argue that Defendants, in deciding whether to remove content, rely on

1   "information supplied by . . . government organizations as the authoritative and established
2   sources." Opp. 8 (citing FAC ¶¶ 60-61); *see also* Opp. 6-7 (citing FAC ¶¶ 42, 46-47, 59). And they
3   rely heavily on a statement from YouTube's CEO stating that the platform would "partner closely
4   with researchers and elected officials from around the world to better understand the challenges of
5   online misinformation" and would "work[] with Members of Congress as well as health experts"
6   to help "keep people safe." FAC ¶ 49, quoted at Opp. 11, 19. But these allegations suggest only
7   that Defendants exercised independent judgment and chose to look to information from public
8   health authorities when moderating content about a novel virus that was rapidly sweeping the globe
9   and that posed a profound threat to public health. Joint action does not exist if the decisions at
10  issue "are 'based on ***independent professional judgments*** and were not subject to state direction.'"
11  *Mathis I*, 891 F.2d at 1432 (quoting *West v. Atkins*, 487 U.S. 42, 53 n.10 (1988)) (emphasis in
12  *Mathis*). As the court recognized in *CHD*, "general statements by the CDC and Mark Zuckerberg
13  about 'working together' to reduce the spread of health or vaccine misinformation, or to promote
14  universal vaccination do not show that the government was a 'joint participant in the challenged
15  activity.'" 2021 WL 2662064, at *11. Simply alleging that "Facebook may have relied on CDC
16  information about vaccines to determine what information is 'misinformation[]' . . . is not enough
17  to show that Facebook's actions were 'compelled' by any particular CDC 'standard of decision.'"
18  *Id.* at *12; *see also id.* ("None of the general statements or questions in Representative Schiff's
19  letter can be interpreted as providing a specific standard of decision that mandated the particular
20  actions that Facebook took with regard to CHD's Facebook page.").
21         None of the cases Plaintiffs cite are to the contrary. *Rawson v. Recovery Innovations, Inc.*,
22  975 F.3d 742, 757 (9th Cir. 2020), involved a patient who was involuntarily committed at a private
23  hospital and a panoply of factors established state action there, including "the necessity of state
24  imprimatur to continue detention, the affirmative statutory command to render involuntary
25  treatment, [and] the reliance on the State's police and *parens patriae* powers." *Id.* Of particular
26  significance, the county prosecutor "played an outsize role in the duration of [plaintiff's]
27  detention," including by communicating with the treating doctors "extensively . . . regarding
28  discharge possibilities, current treatment methods, [and] the strength of the evidence against

1    [plaintiff]." *Id*. at 754. None of these factors are present here. Similarly, unlike in *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012), there is no allegation here that Defendants were authorized by the government to exercise police powers, including to "issue a citation to appear in court for the crime of misdemeanor trespassing." *Id.* at 1140. *Hernandez v. AFSCME California*, 424 F. Supp. 3d 912, 917 (E.D. Cal. 2019), *appeal docketed*, No. 20-15076 (9th Cir. Jan. 16, 2020) is also inapposite. There, the court found joint action where a union contract authorized the State of California to deduct monthly dues and remit them to the union. The unions thus "necessarily relied on the state and its procedures to extract the dues" from employees. *Id*. at 922. Here, there is no comparable allegation of entanglement between the government and Defendants.

Finally, Plaintiffs' assertion that Facebook revised its position with respect to the COVID-19 lab-leak hypothesis in May 2021, *see* Opp. 17-18, does nothing to support Plaintiffs' claim. These asserted facts "post-date the relevant conduct that allegedly injured Plaintiff[]" and "do not establish joint action." *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1125-1126 (N.D. Cal. 2020). Indeed, Plaintiffs' attempt to show their relevance only reveals the unsustainable breadth of their theory. Plaintiffs argue that, because Facebook supposedly followed President Biden's lead in assessing the lab-leak hypothesis in May 2021, it must have "chos[en] to use governmental sources as the authoritative truth" in general, Opp. 18, supporting the theory that it outsourced its content moderation policies to the CDC in mid-2020. But the only reasonable inference supported by the allegation is that Facebook revised its policies as new facts emerged. None of the cases finding joint action are that loose—Plaintiffs cannot even keep straight what government entities were part of the supposed joint action. *See CHD*, 2021 WL 2662064, at *23.[2]

---

[2] Because Plaintiffs' new assertions do nothing to salvage Plaintiffs' theory of state action, to the extent that Plaintiffs' opposition is construed as a motion seeking leave to supplement Plaintiffs' FAC, *see* Opp. 17 n.3, that request is futile and should be denied. *See Balik v. Toy Talk, Inc.*, 2016 WL 3212455, at *3 (N.D. Cal. June 6, 2016) ("a motion to amend should be denied if it appears that amendment would be futile") (Tigar, J.); *see also Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013) (the same standard applies to motions to supplement under Rule 15(d) as to motions to amend under Rule 15(a)). Indeed, the *CHD* court denied leave to supplement based on identical allegations. *See CHD*, 2021 WL 2662064, at *23.

## II. PLAINTIFFS' CLAIM IS BARRED BY THE FIRST AMENDMENT

Plaintiffs' claim independently fails because the First Amendment protects Defendants' exercise of editorial judgment to remove information from their platforms. MTD at 18-19. Plaintiffs do not dispute that Defendants have the right to refuse to publish views with which they disagree. Opp. 25; *accord Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 257-258 (1974) ("The choice of material to go into a newspaper . . . constitute[s] the exercise of editorial control and judgment."). Instead, Plaintiffs offer the circular argument that "editorial rights will not apply if Defendants are found to be state actors." Opp. 25. But, as discussed above, Plaintiffs have not alleged a viable state action theory. Moreover, Plaintiffs ignore Supreme Court precedent recognizing that "the degree to which the First Amendment *protects* private entities" is a "distinct question" from the state-action question. *Halleck*, 139 S. Ct. at 1931 n.2; *see also Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 n.6 (2d Cir. 1983).

The injunctive relief that Plaintiffs seek is unavailable. *See, e.g., Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630 (D. Del. 2007) (granting motion to dismiss because "the injunctive relief sought by Plaintiff contravenes Defendants' First Amendment rights"); *see also* Mot. 18-19. Plaintiffs seek to force Defendants to publish Plaintiffs' content, even though Plaintiffs' content violates Defendants' policies. In other words, Plaintiffs seek to "[m]andat[e] speech that [YouTube and Facebook] would not otherwise make." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). But that is precisely what the First Amendment forbids: "the choice of a speaker not to propound a particular point of view . . . is presumed to lie beyond the government's power to control." *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 575 (1995); *accord NetChoice, LLC v. Moody*, 2021 WL 2690876, at *8-9 (N.D. Fla. June 30, 2021).

Plaintiffs are wrong to suggest that *Carlin* is to the contrary. *Carlin* did not approve of an injunction requiring a private company to publish objectionable speech contrary to its own stated wishes and policies. To the contrary, *Carlin* actually undercuts Plaintiffs' claim and demonstrates courts' concern for the free speech of private companies that have been compelled by the government in violation of the First Amendment.

As discussed above, in *Carlin*, a regional telephone company had provided the plaintiff with a line to "suppl[y] salacious telephone messages to the public," until a county prosecutor threatened to prosecute the provider unless it cut off plaintiff's service. 827 F.2d at 1292-93. In response to that direct threat, which specifically identified the plaintiff by name, the provider "immediately" acted to terminate plaintiff's service, and thereafter adopted a policy to refuse service to companies offering sexual telephone messages to the public. *Id.* at 1293. But even as the court found that the provider's initial termination was state action under coercion by the county prosecutor, it expressly held that the provider's subsequent editorial decision not to carry adult entertainment services was ***not*** state action, and that the plaintiff was not entitled to an injunction overriding the provider's judgment:

> It does not follow, however, that Mountain Bell may never thereafter decide independently to exclude Carlin's messages from its 976 network. It only follows that ***the state may never induce Mountain Bell to do so***. The question is whether state action also inhered in Mountain Bell's decision to adopt a policy excluding all "adult entertainment" from the 976 network. We hold that it did not.

*Id.* at 1296-97 (emphasis added, footnote omitted). The court explained that the provider was "now free to once again extend . . . service" to plaintiff, noting that its decision holding that the country prosecutor's threat was unconstitutional "substantially immunizes Mountain Bell from state pressure to do otherwise." *Id.* at 1297. But, the court made clear, "[s]hould Mountain Bell not wish to extend its 976 service to Carlin, it is also free to do that." *Id.* On that basis, the court ***vacated*** the injunction barring Mountain Bell from disconnecting plaintiff's service. *Id.* at 1293, 1297.

*Carlin* thus squarely rejects the idea that state compulsion somehow deprives a private party of its independent First Amendment rights to exercise editorial judgment and exclude speakers and speech that it deems to be objectionable. While the state may not be permitted to override the editorial judgment of private providers by compelling them, on threat of prosecution, to deny service to a particular entity (which is nothing like what is alleged here), even if it did, those private providers retain their rights to decide not to host speech that they find objectionable. For the same reason, even crediting Plaintiffs' baseless theory of state action, Plaintiffs may not override Defendants' decision to remove Plaintiffs' videos from their private platforms.

## CONCLUSION

The FAC should be dismissed. Because it is now beyond doubt that further amendment would be futile, dismissal should be with prejudice.

Respectfully submitted,

Dated: July 9, 2021

WILMER CUTLER PICKERING, HALE AND DORR LLP

By: */s/ Sonal N. Mehta*
　　　SONAL N. MEHTA

*Attorney for Defendant Facebook, Inc.*

WILSON SONSINI GOODRICH & ROSATI

By: */s/ Lauren Gallo White*
　　　Lauren Gallo White

*Attorney for Defendant YouTube, LLC*

**SIGNATURE ATTESTATION**

I, Sonal M. Mehta, hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing of this e-filed document. I further attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

By:  */s/ Sonal N. Mehta*
     Sonal N. Mehta